IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CENTURY SURETY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-02553-N |
| | § | |
| AJREDIN "DANNY" DEARI, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendant Scott M. Seidel's (Trustee of Pastazios Pizza Inc.

Creditor Trust) motion for partial summary judgment [228] and Plaintiff Century Surety

Company's ("Century") cross motion for summary judgment [288].  Because Century had

no duty to defend or indemnify the underlying state court action, the Court grants Century's

cross motion for summary judgment.

### I. ORIGIN OF THE DISPUTE

In 2010, Century issued a Commercial General Liability Policy (the "Policy") to

Pastazios Pizza Inc. ("PPI").  *See* App. to Def.'s Mot. for Summ. J. Ex. A, 1 [230-1]

(hereafter "Policy").  In 2013, Intervenor Defendant Jane Doe brought a state court action

against Defendants Ajredin "Danny" Deari, owner of PPI, Dritan Kreka, and PPI for

damages arising out of Defendants' provision of alcohol and illegal drugs to Doe and

subsequent sexual assault.  *See* App. to Mot. for Summ. J. Ex. F [230-6] (hereafter "Doe's

Fourth Am. Pet.").  Century filed this declaratory action in July 2013 requesting the Court

ORDER – PAGE 1

rule it had no duty to defend or indemnify PPI or Deari in Doe's state court claim. *See* Original Compl. [1].

Doe, an eighteen year old recent high school graduate, alleged in her state court petition that Kreka invited her to meet at Back Nine Bar and Grill in Addison, Texas in April of 2011 to discuss career opportunities in the food service industry. *See* Doe's Fourth Am. Pet. at ¶13 [230-6]. Kreka allegedly introduced Doe to Deari at Back Nine. *Id.* After Deari and Kreka tried unsuccessfully to order Doe an alcoholic beverage at Back Nine, Deari suggested they go to his restaurant, PPI. *Id.* at ¶¶14–15. On the way, Deari allegedly stopped at a liquor store and purchased a bottle of liquor. *Id.* at ¶15. After arriving at PPI, Deari ordered a round of beers and offered one to Doe. *Id.* at ¶16. Doe also alleged Deari poured shots of the liquor he had purchased for Doe. *Id.* at ¶17. Doe alleged Deari and PPI provided her with five or six shots of liquor and three beers over the course of the afternoon. *Id.* at ¶18. Doe also alleged that someone provided her with a date rape drug, flunitrazepam metabolite ("Rohypnol"), without her knowledge. *Id.* at ¶48. Doe alleged Deari then told her to get into his vehicle, where she lost consciousness. *Id.* at ¶¶19–20. Doe alleged Deari took her to a hotel room nearby where she regained consciousness while Deari was actively sexually assaulting her. *Id.* at ¶21. Deari was subsequently criminally prosecuted for aggravated assault, to which he confessed in August 2014. *Id.* at ¶26.

Doe brought a civil suit in state court on April 24, 2013 against PPI, Deari, and Kreka. Doe's suit included claims for threat of bodily injury, assault, and sexual assault against Deari and Kreka. *Id.* at ¶¶28–44. Doe also brought a claim against PPI for negligence. *Id.*

ORDER – PAGE 2

at ¶¶45–52.  Doe alleged PPI owed her several duties as an invitee, including to protect her against an unreasonable risk of harm, which it allegedly breached.  *Id.*  Further Doe alleged causes of action for Dram Shop Liability, false imprisonment, and premises liability against PPI.  *Id.* at ¶¶53–72.  Finally, Doe brought a cause of action against all defendants for aiding and abetting.  *Id.* at ¶¶73–83.  Century initially provided PPI a defense in the state court case.  *See* App. to Mot. for Summ. J. Ex. G, 258–268 [230-7].

Century subsequently withdrew its defense of PPI.  *See* App. to Mot. for Summ. J. Ex. H, 270–271 [230-8].  PPI then filed for bankruptcy.  *See* App. to Mot. for Summ. J. Ex. I, 283–93 [230-9].  As a result of the bankruptcy proceedings, Seidel was appointed Trustee under the Creditor Trust Agreement.  *See* App. to Mot. for Summ. J. Ex. R, 355–404 [230-18]. The Creditor Trust Agreement assigned all causes of action of PPI and the Bankruptcy Estate to the Trust.  *Id.*  Seidel, as trustee, then intervened in this declaratory action by moving to substitute Pastazios Pizza Inc. Creditor Trust in place of PPI.  *See* Order, June 15, 2015 [39].

Counsel for PPI and Deari in the state court case withdrew a month before trial.  *See* App. to Mot. for Summ. J. Ex. V, 445–47 [230-22].  Seidel hired new counsel for PPI in the state court case ten days later.  *See* App. to Mot. for Summ. J. Ex. NNN, 1948–1950 [230-66].  Doe's state court case continued to a bench trial.[1]  Less than a month later, and after a three day bench trial, the state court entered a Final Judgment awarding Doe $16,432,336.83

---

[1] Trial transcript is contained in Exhbits HHH– MMM.  *See* App. to Mot. for Summ. J. 1243–1946 [230].

in damages, jointly and severally against Deari and PPI, and $2,500,000.00 each in exemplary damages against both PPI and Deari. *See* App. to Mot. for Summ. J. Ex. GGG, 1239–1242 [230-59].

Century filed this declaratory judgment action seeking a declaration that it owed no duty to defend or indemnify PPI, Deari, or Kreka (collectively "Defendants") in the underlying state suit. *See* Original Compl. at ¶16. Century maintains the Defendants were not entitled to a defense under the Policy because the events alleged in Doe's complaint do not qualify as an "occurrence" as defined by the Policy, and because coverage is barred by the Policy's numerous exclusions. *Id.* at ¶18.

Seidel now moves for partial summary judgment. *See* Mot. for Partial Summ. J. [228]. Century opposes the motion, and pursuant to a joint stipulation agreed to by the parties, its opposition is deemed to be a cross-motion for summary judgment on its duty to defend and indemnify. *See* Pl.'s Resp. to Mot. for Summ. J. ("Pl.'s Resp.") [289]; *see also* Stipulation and Agreed Order [256].

## II. THE SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of

ORDER – PAGE 4

the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond

peradventure all of the essential elements of the claim or defense to warrant judgment in his

favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant

bears the burden of proof, the movant may demonstrate entitlement to summary judgment

either by (1) submitting evidence that negates the existence of an essential element of the

nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support

an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at

322–25. Once the movant has made this showing, the burden shifts to the nonmovant to

establish that there is a genuine issue of material fact so that a reasonable jury might return

a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated

assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs.*

*Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are

resolved in favor of the nonmoving party "'only when an actual controversy exists, that is,

when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City*

*of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v.*

*Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

ORDER – PAGE 5

### III. THE COURT GRANTS CENTURY'S MOTION

Under Texas law, "[t]he interpretation of an insurance policy is a question of law." *N.Y. Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). Insurance policies are contracts, and as such, are governed by contract interpretation principles. *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir.1995). When deciding if there is a duty to defend, courts follow the "eight corner" or the "complaint allegation" rule. *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). This rule "requires the trier of fact to examine *only* the allegations in the [underlying] complaint and the insurance policy in determining whether a duty to defend exists." *Id.* (alteration and emphasis in original). Thus "[i]t is inappropriate to consider 'facts ascertained before the suit, developed in the process of the litigation, or by the ultimate outcome of the suit.'" *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir. 1996) (quoting *American Alliance Ins. Co. v. Frito–Lay, Inc.*, 788 S.W.2d 152, 153–54 (Tex. App. – Dallas 1990)).

The duty to defend arises where "the facts alleged in the complaint, if taken as true, 'potentially state a cause of action within the terms of the policy.'" *Canutillo*, 99 F.3d at 701. "The duty to defend is determined by examining the latest amended pleading upon which the insurer based its refusal to defend the action." *Id.* When the complaint alleges at least one cause of action within coverage, the insurer has a duty to defend the insured. *Id.* If instead, the "petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *American Physicians Ins. Exch. v. Garcia*, 876

ORDER – PAGE 6

S.W.2d 842, 848 (Tex. 1994).  Coverage is determined from factual allegations in the complaint rather the legal theories presented.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  "[T]he insured bears the burden of showing that the claim is potentially within the policy's coverage."  *Canutillo*, 99 F.3d at 701.  Alternatively, "the insurer bears the burden of establishing that an exclusion in the policy" relieves the insurer or the duty to defend.  *Id.*

### A.  Century Had No Duty to Defend Under Coverage A (Bodily Injury) Because The Liquor Liability Exclusion Precludes Coverage

Seidel contends Century had a duty to defend Deari and PPI in the underlying lawsuit because Doe alleged PPI's negligence caused her bodily injury and therefore qualified as an occurrence as required under Coverage A.  *See* Def.'s Mot. for Summ. J. 26 [228].  The Policy provides coverage under Coverage A for bodily injuries that are "caused by an 'occurrence' that takes place in the 'coverage territory.'"  *See* Policy at 23.  An occurrence is defined as "an accident."  *Id.* at 54.  Because Deari's conduct was intentional, his conduct necessarily does not fit into the definition of an occurrence.  Seidel argues that Century nonetheless had a duty to defend because PPI's alleged negligent conduct qualified as a separate occurrence that triggered Century's duty. *See* Def.'s Mot. for Summ. J. 26.

Seidel first argues Deari was not an insured, as defined under the policy.  *See* Mot. for Summ. J. 29.  The policy provides coverage, and therefore exclusions, for insureds.  *See* Policy at 31.  Executive officers are insureds "only with respect to their duties as your officers or directors."  *Id.*  The "Separation of Insureds" provides the Policy applies "[a]s if each Named Insured were the only Named Insured."  *See* Policy at 35.  Seidel argues that,

even if Deari was an insured, the "Separation of Insureds" makes it such that PPI was a separate insured from Deari, and therefore entitled to a defense under the policy. *See* Mot. for Summ. J. 30. Consequently, Seidel argues the Court must view coverage from PPI's standpoint as if it were the only Named Insured. Thus, Deari's intentional and excluded conduct would not defeat coverage because PPI's alleged negligence constitutes a cause of action that is an occurrence. *Id.* But even where an occurrence is alleged, the Policy contains numerous exclusions to coverage including an intentional acts exclusion, an abuse or molestation exclusion, a criminal acts exclusion, a liquor liability exclusion, and a liquor license not in effect exclusion. It is clear that these exclusions cover Deari's intentional conduct. Seidel maintains none of the exclusions to coverage applies when PPI is the named insured. *Id.*

The Court need not decide whether Deari is an insured or whether Doe's allegations state a claim of negligence against PPI that qualifies as an occurrence under the Policy for Coverage A. Even if PPI is treated as the only named insured, and even if Doe's allegations stated a claim of negligence against PPI and thus alleged a claim potentially within coverage, Century had no duty to defend the underlying state suit because it carried its burden of showing the liquor liability exclusion applies. *See Canutillo*, 99 F.3d at 701 (noting that the insurer has the burden of "establishing that an exclusion in the policy constitutes an avoidance of or affirmative defense to coverage."). Thus, if the liquor liability exclusion applies, Century did not have a duty to defend PPI in the Doe suit under Coverage A.

The "liquor liability exclusion" in Coverage A states Century has "neither a duty to

defend nor a duty to indemnify any insured for any claim or suit, and this insurance does not

apply, if any proximate or contributing cause of an 'occurrence' arises out of 'liquor

liability.'" Policy at 58.  The exclusion defines liquor liability as:

> "Bodily injury" or "property damage" for which any insured may be held
> liable by reason of:
>
> a. Causing or contributing to the intoxication of any person;
> b. Furnishing of alcoholic beverages to a person under the legal drinking age
> or under the influence of alcohol; or
> c. Violation of any statute, ordinance or regulations relating to the sale, gift,
> distribution or use of alcoholic beverages.

*See* Policy at 58.  The "exclusion applies to all insureds regardless of whether you are in the

business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages."

*Id.*  The liquor liability exclusion clearly excludes coverage for injuries that arise out of the

provision of alcohol, as Doe alleged here.  But, as Seidel points out, the exclusion states it

"does not apply to claims within the 'products-completed operations hazard.'" *Id.*  Seidel

claims Doe's allegations do not fall into the liquor liability exclusion because of the

"products-completed operations hazard" provision. *See* Policy at 49.  But that is not the case.

Products-completed operations hazard (PCOH) includes all bodily injury "that arises

out of 'your products' if the 'bodily injury' . . . occurs after you have relinquished possession

of those products."    *Id.* at 49.  Product is defined under the policy as "any goods or

products, other than real property, manufactured, sold, handled, distributed or disposed of

by you." *See* Policy at 37.  Seidel argues Doe alleged that "PPI sold, retrieved, and served

ORDER – PAGE 9

multiple alcoholic beverages to Doe." *See* Mot. For Summ. J. 28.  Seidel correctly points out

that alcohol is a product that PPI provides.  But only beer is a product of PPI.  Neither the

unlicensed alcohol nor the rohypnol that Deari gave to Doe qualify as PPI's "products" under

the policy because neither the liquor nor the rohypnol are a good or product that PPI

manufactures, sells, handles, or distributes regularly, or on the day in question.  Doe does not

allege that PPI served her the liquor or rohypnol, thus foreclosing that they\ are "products"

under the policy.  Nor could she, because if she did allege PPI committed individual, criminal

behavior then the policy would foreclose coverage under the intentional acts exclusion.

Accordingly Doe's injuries do not arise out of PPI's products. Based on Doe's allegations

in her fourth amended petition, her injuries arose out of Deari's criminal conduct, both his

provision of unlicensed hard liquor and rohypnol and his sexual assault.

The Policy also includes a "Liquor License Not in Effect" exclusion.  *See* Policy at

58.  The exclusion states the Policy does not apply to bodily injury "arising out of alcoholic

beverage sold, served, or furnished while any required license is suspended or after such

license expires, is cancelled or revoked."  *See id.*  PPI did not have a license to sell hard

liquor.  *See* Doe's Fourth Am. Pet. at ¶15.  So even if Doe alleged PPI served her the

unlicensed liquor in question, the policy would preclude coverage.

Century has shown that even if Doe's allegations establish an occurrence from the

standpoint of PPI, the liquor liability exclusion in the Policy bars coverage.  Nor does the

PCOH provision create a loophole in this exclusion for this case.  Doe alleged injuries that

arose out of Deari's intentional conduct, specifically his provision of unlicensed liquor and

ORDER – PAGE 10

an illegal drug, rohypnol, neither of which are products of PPI. Thus Century had no duty

to defend under Coverage A.[2]

### B. Century Had No Duty to Defend Because The Intentional Acts Exclusion Bars Coverage Under Coverage A and Coverage B (Advertising Injury)

The Intentional Acts Exclusion, in both Coverage A and B, also precludes coverage

under the Policy. Under Texas law, "[c]orporations can act only through agents." *Fort*

*Worth Elevators Co. v. Russell*, 123 Tex. 128, 137 (1934); *see also Hammerly Oaks, Inc. v.*

*Edwards*, 958 S.W.2d 387, 391 (Tex. 1997). "When actions are taken by a vice-principal of

a corporation, those acts may be deemed to be the acts of the corporation itself." *GTE Sw.,*

*Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999). A vice-principal is one who "represents the

corporation in its corporate capacity, and includes persons who have authority to employ,

direct, and discharge servants of the master, and those to whom a master has confided the

management of the whole or a department or division of his business." *Id.* Doe alleges Deari

was the owner and agent of PPI. *See* Doe's Fourth Am. Pet. at ¶13, 18. Deari was the sole

proprietor of PPI, and as such at all times Deari had authority to employ, direct, and

discharge employees. In fact, Doe insinuates in her legal allegations that Deari was a vice-

principal of PPI. *See id.* at ¶49 ("[PPI] is grossly negligent because of the acts of other

Defendants to the extent that any other grossly negligent Defendant was a vice principal of

[PPI] and was acting in the course and scope of that Defendant's employment.") Thus Deari

was a vice-principal of PPI and his actions are imputed to his restaurant, PPI. *See Chrysler*

---

[2]Given the Court's holding that the liquor liability exclusion applies, it need not address the other potentially applicable exclusions.

*Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 253 (Tex. 2009) ("As

vice-principals, their acts are the acts of the corporation itself, and corporate liability in this

situation is direct rather than vicarious.")

Seidel contends *King v. Dallas Fire Insurance Co.* requires the Court to view the

negligence claim against PPI independently of the intentional claims against Deari. *See* Mot.

for Summ. J. 30. In *King,* a third party sued an employee, for assault, and King, the owner

of a construction company, for negligent hiring, training, and supervision. *King v. Dallas*

*Fire Ins. Co.*, 85 S.W.3d 185, 186 (Tex. 2002). The employer's insurance company argued

there was no duty to defend, despite the presence of a separation of insureds provision,

because the policy barred coverage for intentional acts. *Id.* The *King* Court did hold that

"[t]he separation-of-insureds provision expressly creates separate insurance policies for King

and King's employee." *Id.* at 188. But in *King,* the separation of insureds provision operated

to distinguish between an employee, who had no managerial position and was not a vice-

principal, and the owner of the company. *Id.* In fact, the *King* court considered the owner-

employer and the company together for purposes of coverage. *Id.*

In *Chrysler*, which was decided after and relied on *King,* the Texas Supreme Court

considered a similar separation of insureds provision. *297* S.W.3d at 253. In *Chrysler*, the

court concluded that under such a provision "intent and knowledge for purposes of coverage

are determined from the standpoint of the particular insured, uninfluenced by the knowledge

of any additional insured." *Id.* (citing *King*, 85 S.W.3d at 188–89). The *Chrysler* court

admonished the court of appeals' conclusion that the company's knowledge was defined only

ORDER – PAGE 12

by the knowledge of the CEO. *Id.* Instead, the *Chrylser* court held that when considering coverage, the court must look from the standpoint of each insured to determine if there is coverage. *Id.* The court held that the knowledge and intent of all vice-principals, not just the CEO, was imputed to the company. *Id.* Thus no coverage was available under the policy at issue. *Id.*

Because Deari is a vice-principal of PPI, his conduct is the conduct of PPI. To determine whether a duty to defend existed, the Court looks at "the factual allegations that show the origin of the damages rather than the legal theories alleged." *Merchants*, 939 S.W.2d at 141. Thus even in spite of the legal allegations made by Doe, the factual allegations establish that the Intentional Acts Exclusion excludes coverage under the Policy's Coverage A and B.

*1. The Intentional Acts Exclusion Also Bars Coverage Under Coverage A.* – Coverage A includes an exclusion for bodily injury "expected or intended from the standpoint of any insured." *See* Policy at 58. Deari "judicially admitted, confessed and stipulated to committing the offense of aggravated assault . . . unlawfully, intentionally, recklessly and knowingly causing [Doe] seriously bodily injury on April 26, 2011." *See* Doe's Fourth Am. Pet. at ¶15. The exclusion specifically states "any insured." *See Harper v. Gulf Ins. Co.*, 2002 WL 32290984, at *7 (D. Wyo. 2002) (holding that a severability clause, similar to the Separation of Insureds provision here, did not negate "the effect of plainly worded policy exclusions" that stated "any insured"). Thus if Deari is an insured under the Policy, then the exclusion applies, regardless of the Separation of Insureds

provision.  But even assuming Deari is not an insured under the Policy, as Seidel contends, the exclusion still applies.  Deari is a vice principal of PPI and thus his actions are imputed to PPI.  Because Deari's intentional acts are imputed to PPI, Century had no duty to defend under Coverage A.

    *2.  The Intentional Acts Exclusion Bars Coverage Under Coverage B.* – Seidel also contends Doe alleged a claim within Coverage B's policy limits.  *See* Mot. For Partial Summ. J. 26.  The Policy provides coverage under Coverage B for damages because of "personal and advertising injury."  Policy at 28.  Century satisfied its burden to show that any claim potentially within coverage of the Policy is barred by the Intentional Acts Exclusion.  Accordingly, Century had no duty to defend the Doe's suit.

    The Policy provides coverage for "personal and advertising injury" under Coverage B.  *See* Policy at 28.  Personal and advertising injury is defined, in relevant part, as bodily injury arising out of "false arrest, detention or imprisonment . . ."  *Id.* at 54.  Doe's fourth amended petition alleged that PPI "willfully detained or participated in [Doe's] detainment" by "providing her with intoxicating products and substances . . . to the point where Plaintiff was virtually unconscious and/or incapable of freely moving herself from one place to another." Doe's Fourth Am. Pet. at ¶63.  Doe's factual allegations include that "[d]espite her desire to go home safely, Plaintiff was effectively detained as a direct result of being provided intoxicating products by" PPI.  *Id.* at ¶19.  But Doe also alleges that she did in fact leave PPI with Deari, who transported her to a nearby hotel.  *Id.* at ¶¶19–21.

The Court holds that the intentional act exclusion in Coverage B precludes coverage of Doe's claims. Coverage B excludes any injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another." First, as stated previously, Deari's intentional acts are imputed to PPI and likewise bar coverage under Coverage B's Intentional Acts Exclusion. Second, Doe alleged PPI willfully detained her at the restaurant, which would itself trigger the Intentional Acts Exclusion. *See* Policy at 28, 50. Third, even accepting Seidel's proposed distinction between PPI and Deari, the Intentional Acts Exclusion would still apply. Doe alleges PPI "willfully detained or participated in the detainment of Plaintiff without Plaintiff's consent." Doe's Fourth Am. Pet. at ¶63. Doe also alleges Deari gave her alcohol "with the express, or very least, tacit approval of [PPI] and its agents and employees." *Id.* at ¶19. Thus, Doe's factual allegations clearly allege PPI acted intentionally, or knowingly, in spite of the negligence theory that she alleges. Even accepting the distinction between PPI and Deari proposed by Seidel because of the Separation of Insureds provision, the intentional acts exclusion bars coverage. Accordingly, Century had no duty to defend under Coverage B.

### C. Century Had No Duty to Indemnify PPI

An insurer's duty to indemnify is based upon the facts that underlie the cause of action and result in liability. *Canutillo*, 99 F.3d at 701. "Under Texas law, the duty to defend is broader than the duty to indemnify." *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998). "Logic and common sense dictate that if there is no duty to defend, then there

ORDER – PAGE 15

must be no duty to indemnify." *Id.* Because Century had no duty to defend the underlying

lawsuit, it likewise had no duty to indemnify the lawsuit.

**CONCLUSION**

Because Century had no duty to defend or indemnify PPI or Deari in the underlying

lawsuit, the Court grants Century's motion for summary judgment.

Signed January 4, 2017.

David C. Godbey
United States District Judge

ORDER – PAGE 16